# EXHIBIT "A"

Filing # 118459596 E-Filed 12/18/2020 01:02:14 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

DEBRA WALLS,

    Plaintiff,

vs.   CASE NO.: 20-CA-00987

COCA-COLA REFRESHMENTS USA, INC.,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DEBRA WALLS, (hereinafter "Plaintiff" or "Ms. Walls"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, COCA-COLA REFRESHMENTS USA, INC., (hereinafter "CCR," "the Company," or "Defendant") and alleges:

### JURISDICTION AND VENUE

1. This is an action for damages which exceed thirty thousand dollars ($30,000.00).

2. This is a civil action by Plaintiff against her former employer for monetary damages, declaratory relief and for other equitable relief pursuant to the Florida Civil Rights Act of 1992, §§760.01-760.10, Florida Statutes.

3. Venue is appropriate in Hillsborough County under § 47.011, Florida Statutes, because the events giving rise to the cause of action occurred in Hillsborough County.

### PARTIES

4. The Plaintiff is DEBRA WALLS, a black female that resides in Hillsborough County, Florida.

5. The Defendant, COCA-COLA REFRESHMENTS USA, INC., is a Foreign Profit Corporation with its principal address located at One Coca-Cola Plaza, N.W., Atlanta, GA 30313.

1

6. The Defendant operates a Beverage Distribution and Bottling center located at 5901 E Fowler Ave, Temple Terrace, FL 33617 in Hillsborough County, Florida.

7. Plaintiff filed an initial charge of discrimination against Defendant with the Tampa Office of Human Rights on July 19, 2019, (Charge No. 19-0003).

### ADMINISTRATIVE PREREQUISITES

8. On April 3, 2019, Ms. Walls timely filed her Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against CCR. The Charge (EEOC Charge No. 511-2019-00705) operated as a dual filing with the Florida Commission on Human Relations (FCHR) pursuant to the EEOC/FCHR workshare agreement. In the Charge of Discrimination, Ms. Walls alleged she was discriminated against based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended. Upon filing her Charge, Ms. Walls became an "aggrieved person" as defined in § 760.02(10), Florida Statutes (2016).

9. More than 180 days have passed since Ms. Walls filed her Charge of Discrimination. Neither Ms. Walls nor the undersigned counsel have received notice of the FCHR's disposition on this charge. The FCHR's non-response is to be treated as a finding of "reasonable cause" pursuant to § 760.11(8), Florida Statutes (2016).

### GENERAL ALLEGATIONS

10. In November 2017, Coca-Cola hired Ms. Walls as a Leave Accommodations Administrative Assistant in Temple Terrace, Florida.

11. During her employment, Coca-Cola denied Ms. Walls overtime and assigned more job responsibilities than her white coworkers who were approved overtime.

12. In October 2018 Brian Rodriguez (white male) and Misty Harper (white female) began treating Ms. Walls differently from her white co-workers because of her race (African-

American). This treatment was so severe that it created a hostile work environment.

13. In November 2018, Ms. Walls made an internal complaint of harassment and discrimination against her supervisor, Misty Harper (white), alleging that Ms. Harper was forcing her to work under more severe scrutiny than her white peers by requiring her to: submit daily timesheets; submit daily emails for approved overtime; and keep a daily log of her work among other things.

14. Following her complaint, Coca-Cola retaliated against Ms. Walls by further increasing the scrutiny under which she worked. Coca-Cola eventually terminated Ms. Walls on January 22, 2019.

**ALLEGATIONS PROVIDING SPECIFIC DETAILS OF THE HOSTILE WORK ENVIRONMENT PROTECTED ACTIVITY AND RETALIATION**

15. On October 4, 2018, Mr. Rodriguez spoke to Ms. Walls in a curt, rude, loud, and unprofessional manner while she was attempting to get assistance with a timesheet issue.

16. On October 5, 2018, Ms. Walls emailed Coca-Cola's Leave and Accommodations Manager, Misty Harper, regarding the previous day's interaction with Mr. Rodriguez. In her email, Ms. Walls expressed her concerns about working under Mr. Rodriguez and let Ms. Harper know she no longer felt comfortable speaking with Mr. Rodriguez. She explained that this was not the first time Mr. Rodriguez had spoken to her in an unprofessional manner. Additionally, Ms. Walls let Ms. Harper know that her coworker, Sheri Grossberg, had witnessed the entire interaction between her and Mr. Rodriguez on October 4, 2018.

17. On October 8, 2018, Ms. Harper asked Ms. Grossberg to provide a written statement of what she had witnessed on Oct 4, 2018.

18. Following the collection of Ms. Grossberg's statement, Ms. Harper let Ms. Walls know that she had made Employee Relations aware of Ms. Walls' concerns about Mr. Rodriguez.

19. Ms. Walls asked Ms. Harper who she should talk to in Employee Relations if she had further issues with Mr. Rodriguez in the future. Ms. Harper never provided a response, and Ms. Walls never heard from anyone in the Employee Relations department.

20. On October 9, 2018, Erika Campbell, the Leave Management Consultant (LMC) for Coke Florida, asked Ms. Walls to assist her with some administrative duties for Coke Florida.

21. Ms. Walls volunteered to assist where possible but explained to Ms. Campbell that she was not familiar with Coke Florida's processes and that during the month of October her workload had increased due to additional tasks for Canada.

22. Ms. Walls brought her increased workflow to Mr. Rodriguez and Ms. Harper's attention. Mr. Rodriguez informed Ms. Walls that he was aware that her workload had increased and approved her use of overtime if necessary.

23. On October 11, 2018, Return to Work Coordinator, Leah Hall, met with Ms. Walls via Skype to discuss the work she wanted Ms. Walls to perform. During the meeting Ms. Hall asked Ms. Walls to help her clear the backlog from Coke Florida's leave of absence inbox in the old Sales Force system. Ms. Hall did not provide Ms. Walls with any formal training in the old Sales Force System and Ms. Walls was forced to spend a lot of time learning this system in order to complete the task.

24. Ms. Wall needed to work additional hours to help Ms. Hall so she emailed Mr. Rodriguez and Ms. Harper on October 22, 2018 seeking permission to work overtime. Later that day, Mr. Rodriguez replied to Ms. Walls' email granting permission to work the additional time. However, on October 23, 2018, Ms. Harper emailed Ms. Walls to note her use of 1.5 hours of overtime and said she would be addressing these hours with Mr. Rodriguez.

25. On October 31, 2018, Mr. Rodriguez requested a leave of absence and Ms. Walls

4

started to report directly to Ms. Harper.

26. On November 16, 2018, Ms. Harper met with Ms. Walls to discuss her use of overtime. During this meeting Ms. Harper became irate and explained that she was placing Ms. Walls on a conduct corrective action because of her use of overtime. Ms. Harper stated that Employee Relations had advised her to give Ms. Walls a conduct corrective action because Ms. Walls continuously worked overtime without approval and was found to be working off the clock on November 11, 2018. Ms. Harper did not email the conduct corrective action to Ms. Walls until after the meeting. Upon reviewing the conduct corrective action on November 19, 2018, Ms. Walls realized that it was a final written Conduct Corrective Action. Ms. Harper never mentioned that the corrective action would be a final warning during their conversation on November 16, 2018.

27. On November 19, 2018, Ms. Harper accused Ms. Walls of failing to properly respond to a leave of absence request from November 13, 2018. Ms. Walls explained that she had cleared the box and that the only requests remaining had been made earlier that day.

28. Following Ms. Harper's accusations that Ms. Walls was not performing her job duties, Ms. Harper denied Ms. Walls permission to work any overtime that was offered to the other administrators. Ms. Harper also instructed Ms. Walls to take daily screenshots of the leave of absence folders to prove that she was working to clear the folders.

29. On November 26, 2018, Ms. Walls returned from the Thanksgiving Holiday to discover over 80 plus emails between the Canada and Coke Florida inboxes. Ms. Walls made numerous requests to work overtime to clear this backlog but Ms. Harper denied each request.

30. By November 28, 2018, the stress placed on Ms. Walls to clear the inboxes without the use of extra time had begun to affect her health and wellness. As such, Ms. Walls complained to Melissa Heggie in Employee Relations about the treatment she had received from Ms. Harper:

specifically, that Ms. Harper spoke to her in a rude, loud, and unprofessional manner; required her to submit daily time sheets and a log of her work; and singled her out on a regular basis treating her worse than her co-workers. Ms. Walls also expressed disappointment at the lack of response by Employee Relations concerning her October 4, 2018, complaint about Mr. Rodriguez.

31. On November 29, 2018, Ms. Walls went to the VP Human Resources Services, Karla Younger's, office because she found herself crying uncontrollably.

32. Following her emotional breakdown in front of Ms. Younger, Ms. Walls spoke with Employee Relations Business Partner, Gayle Essex. Ms. Walls let Ms. Essex know that she lacked confidence that Coca Cola's Employee Relations department was taking her complaints seriously since they all but ignored her complaint against Mr. Rodriguez on October 4, 2018. Ms. Walls also explained that her final warning was unwarranted because she had sought and received permission to use overtime to clear the back log in leave of absence claims.

33. On December 3, 2018, Ms. Walls emailed Ms. Harper and Coca Cola's Director of Global Comp, Benefits & Talent Operations, Carolynne Elliott, seeking approval to work additional hours to work on her assigned leave of absence folders. Ms. Harper replied, stating Ms. Walls' request would be reviewed at 7:50pm that evening. Unfortunately, Ms. Walls never received a follow-up response from Ms. Harper after this email.

34. On December 5, 2018, Ms. Hall emailed Ms. Walls regarding the high numbers of emails in the Coke Florida inbox. Following Ms. Hall's email, Ms. Harper sent an email out to the Canada Leave Management team to pull emails that belong to them out of the inbox because, "Debi was going on DND this morning to work on the FL box, but I believe those haven't been set up either." Ms. Walls was terribly upset by this email as Ms. Harper had essentially told the entire Canadian team that she did not feel that she could handle her job.

35. On December 11, 2018, Ms. Elliott met with the Tampa Leave Accommodation Team from 1:00 to 2:00 p.m. and the Canadian Leave Team then from 2:00 p.m. to 3:00 p.m. During the meeting with the Canadian team, Ms. Elliott discussed the continued increased workload for Canada. During the meeting, Ms. Elliott let Ms. Walls know that she would be allowed to work extra hours to get caught up on the backlog. Despite Ms. Elliott's approval of additional time, Ms. Harper required Ms. Walls to submit requests for daily approval for any additional hours worked. Again, Ms. Walls was the only employee Ms. Harper required to do this.

36. On January 22, 2019, Ms. Harper terminated Ms. Walls' employment stating that Ms. Walls had worked 4.98 hours of overtime on December 22, 2018, without approval. However, Ms. Harper was out on Vacation December 20-21, 2018. By this time, Mr. Rodriguez had returned from his leave of absence. As such, Ms. Walls emailed Mr. Rodriguez for approval to work overtime and Mr. Rodriguez granted Ms. Walls' request.

37. Ms. Walls was the only non-white Leave Accommodations Administrative Assistant in Temple Terrace location.

38. None of Ms. Walls co-workers (white) experienced the same treatment from Ms. Harper as Ms. Walls. Specifically, Ms. Harper gave permission for Ms. Walls' co-workers to work overtime and they were not required to send daily screenshots to prove they were being accountable for their work.

39. Ms. Harper treated Ms. Walls differently, scrutinized her work, held her to a different standard and ultimately terminated her because of her race in violation of the Florida Civil Rights Act.

40. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

41.     Plaintiff, DEBRA WALLS, re-alleges and incorporates by reference the allegations set forth above as if set forth fully herein.

42.     The Florida Civil Rights Act makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race.

43.     Plaintiff is a member of a protected class and protected by The Florida Civil Rights Act from discrimination based on her race.

44.     Plaintiff has satisfied all procedural and administrative requirements set forth in The Florida Civil Rights Act.

45.     During Ms. Walls' employment, CCR denied her overtime and assigned her a heavier workload than her white coworkers.

46.     When Ms. Walls made an internal complaint of harassment and discrimination against her supervisor, Misty Harper (white), she became the victim of retaliation in the form of bogus disciplinary actions and eventually termination.

47.     As a direct and proximate result of Ms. Harper's actions, Plaintiff has suffered loss of employment, loss of income, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Ms. Harper's conduct described herein.

48.     Defendant, CCR, is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of The Florida Civil Rights Act.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in The Florida Civil Rights Act, and prays for a judgment:

A.  Preliminarily and permanently enjoining and restraining Defendant, CCR, from engaging in acts of discrimination against Plaintiff;

B.  Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant, CCR;

C.  Awarding Plaintiff compensatory damages against Defendant, CCR; and

D.  Awarding reasonable attorney's fees and costs incurred in this action as provided in The Florida Civil Rights Act.

## COUNT II
### RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT FOR REPORTING DISCRIMINATION ON THE BASIS OF RACE

49. Plaintiff, DEBRA WALLS, re-alleges and incorporates by reference the allegations set forth above as if set forth fully herein.

50. The Florida Civil Rights Act makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's engagement in a protected activity.

51. Plaintiff is a member of a protected class and protected by The Florida Civil Rights Act from retaliation for reporting discrimination based on her race.

52. Plaintiff engaged in a protected activity when she made an internal complaint of harassment and discrimination against her supervisor, Misty Harper.

53. Ms. Harper retaliated against Plaintiff for reporting the discrimination by terminating Ms. Harper's employment on January 22, 2019.

54. Ms. Harper acted with intent, malice, and reckless disregard for Plaintiff's protected rights when she committed the above-described acts of retaliation because of Plaintiff's reports of discrimination.

55. Ms. Harper's above-described actions are all attributable to Defendant, CCR, as she was acting within the scope of her employment as an employee of Defendant at the time she committed these acts.

56. As a direct and proximate result of Ms. Harper's actions, Plaintiff has suffered loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

57. Defendant, CCR, is liable for the discrimination and retaliation alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of The Florida Civil Rights Act.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court as provided in The Florida Civil Rights Act, and prays for a judgment:

A. preliminarily and permanently enjoining and restraining Defendant, CCR, from engaging in acts of discrimination against Plaintiff;

B. awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant, CCR;

C. awarding Plaintiff compensatory damages against Defendant, CCR; and

  D. awarding reasonable attorney's fees and costs incurred in this action as provided in The Florida Civil Rights Act.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 18th day of December 2020.

               */s/ Jason W. Imler, Esq*
               Jason W. Imler
               Florida Bar No. 1004422
               Gary L. Printy, Jr
               Florida Bar No. 41956
               PRINTY & PRINTY, P.A.
               3411 W. Fletcher Ave., Suite A
               Tampa, Florida 33618
               Telephone (813) 434-0649
               FAX (813) 423-6543
               garyjr@printylawfirm.com
               jason.imler@printylawfirm.com
               toni.harrold@printylawfirm.com
               wanda.butler@printylawfirm.com